## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Sean F. Cox |
| IN RE: SHOCK ABSORBERS | |
| THIS DOCUMENT RELATES TO: DIRECT PURCHASER ACTIONS | 2:15-cv-03301-SFC-RSW 2:16-cv-13616-SFC-RSW |

### DIRECT PURCHASER PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION COSTS AND EXPENSES, AND SERVICE AWARDS TO THE CLASS REPRESENTATIVES

Pursuant to Rules 23 and 54 of the Federal Rules of Civil Procedure, VIP, Inc. and Performance Internet Parts, LLC ("Plaintiffs") move the Court for an award of attorneys' fees and litigation costs from the proceeds of the settlements reached with the KYB and Hitachi Astemo Defendants (collectively, "Settling Defendants"). The settlements with the Settling Defendants total $6,000,000 ("Settlement Fund"). Plaintiffs also request service awards for the class representatives, which would be paid from the Settlement Fund. The grounds supporting this motion are set forth in the accompanying memorandum of law.

Dated: April 10, 2023

Respectfully submitted,

/s/ David H. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
FINK BRESSACK
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500

*Interim Liaison Counsel for the Direct Purchaser Plaintiffs*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
   & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 238-1700

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
   & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
2001 Market Street
Suite 3420
Philadelphia, PA  19103
Telephone: (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

Solomon B. Cera
Thomas C. Bright
Pamela A. Markert
CERA LLP
201 California Street, Suite 1240
San Francisco, CA 94111
Telephone: (415) 777-2230

*Counsel for Plaintiff Performance Internet Parts, LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 Honorable Sean F. Cox |
| IN RE: SHOCK ABSORBERS | : : : | |
| THIS DOCUMENT RELATES TO: DIRECT PURCHASER ACTIONS | : : : : | 2:15-cv-03301-SFC-RSW 2:16-cv-13616-SFC-RSW |

**MEMORANDUM IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION COSTS AND EXPENSES, AND SERVICE AWARDS TO THE CLASS REPRESENTATIVES**

i

**TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED ........................................................... ii

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................. iii

I.     INTRODUCTION ........................................................................... 1

II.    BACKGROUND AND SUMMARY OF WORK PERFORMED TO DATE ................... 1

III.   CLASS NOTICE ............................................................................ 2

IV.   THE WORK PLAINTIFFS' COUNSEL PERFORMED FOR THE BENEFIT OF THE SETTLEMENT CLASSES ................................................................... 3

V.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE .......................... 4

    A.   THE PERCENTAGE-OF-THE-RECOVERY METHOD PREVIOUSLY EMPLOYED BY THE COURT IN THIS MDL IS APPROPRIATE FOR ASSESSING THE FEE REQUEST. ........................................................ 4

    B.   THE REQUESTED FEE CONSTITUTES A FAIR AND REASONABLE PERCENTAGE OF THE SETTLEMENT FUND. .................................... 5

    C.   THE FACTORS IDENTIFIED BY THE SIXTH CIRCUIT SUPPORT THE REQUESTED FEE. ................................................................. 7

        1.   PLAINTIFFS' COUNSEL OBTAINED A VALUABLE BENEFIT FOR THE CLASSES ...................................................... 8

        2.   THE VALUE OF PLAINTIFFS' COUNSEL'S SERVICES ON AN HOURLY BASIS CONFIRMS THAT THE REQUESTED FEE IS REASONABLE. .......................................................... 8

        3.   THE REQUESTED FEE IS FAIR AND REASONABLE GIVEN THE REAL RISK THAT COUNSEL COULD HAVE RECEIVED NO COMPENSATION FOR THEIR EFFORTS. ............................... 9

        4.   SOCIETY HAS AN IMPORTANT STAKE IN THIS LAWSUIT AND IN AN AWARD OF REASONABLE ATTORNEYS' FEES ....................... 10

        5.   THE COMPLEXITY OF THIS CASE SUPPORTS THE REQUESTED FEES. ................................................................... 11

        6.   SKILL AND EXPERIENCE OF COUNSEL ........................... 11

VI.   THE COURT SHOULD AUTHORIZE CO-LEAD SETTLEMENT CLASS COUNSEL TO DETERMINE FEE ALLOCATIONS. ................................................... 12

VII.  REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES INCURRED IN THE PROSECUTION OF THIS LITIGATION ................................................... 13

VIII. SERVICE AWARDS TO THE CLASS REPRESENTATIVES ARE APPROPRIATE. 14

IX.   CONCLUSION ............................................................................ 16

i

## STATEMENT OF ISSUES PRESENTED

1.   Should the Court award Plaintiffs' counsel attorneys' fees of 33 1/3% of the Settlement Fund?

   Suggested Answer:    Yes.

2.   Should the Court award Plaintiffs' counsel litigation costs and expenses from the Settlement Fund?

   Suggested Answer:    Yes.

3.   Should the Court award the class representatives, VIP, Inc. and Performance Internet Parts, LLC service awards of $25,000?

   Suggested Answer:    Yes.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 23(h)

Fed. R. Civ. P. 54(d)

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996)

*Rawlings v. Prudential-Bache Properties, Inc.*,
    9 F.3d 513 (6th Cir. 1993)

## I.    INTRODUCTION

Through the efforts of the class representatives, VIP, Inc. and Performance Internet Parts, LLC ("Plaintiffs"), and Plaintiffs' counsel, settlements totaling $6,000,000 ("Settlement Fund") have been reached with the KYB and Hitachi Astemo Defendants[1] (collectively, "Settling Defendants") in the *Shock Absorbers* direct purchaser case.

The law firms responsible for achieving the settlements respectfully move for an order: (1) awarding attorneys' fees of one-third of the Settlement Fund; (2) awarding $17,231.71 in unreimbursed litigation costs and expenses incurred in the prosecution of this litigation through February 28, 2023; and (3) authorizing service awards of $25,000 to the class representatives. For the reasons set forth herein, Plaintiffs' counsel respectfully submit that the requested fee, expenses, and service award are reasonable and fair under both well-established Sixth Circuit precedent concerning such awards in class action litigation and this Court's prior decisions in the *Automotive Parts Antitrust Litigation*.

## II.    BACKGROUND AND SUMMARY OF WORK PERFORMED TO DATE

The *Shock Absorbers* case is part of the overall *Automotive Parts Antitrust Litigation* that was centralized in this Court by the Judicial Panel on Multidistrict Litigation in 2012. The background of the *Shock Absorbers* case is set forth in the related Memorandum in Support of Direct Purchaser Plaintiffs' Motion for Final Approval of Proposed Settlements, which was simultaneously filed on April 10, 2023, and will not be fully repeated here.

In summary, Plaintiffs' counsel have:

- Investigated the automotive parts industry and drafted the initial and amended complaints against the Defendants;

---

[1] The Settling Defendants include: KYB Corporation (f/k/a Kayaba Industry Co., Ltd.) and KYB Americas Corporation (collectively, "KYB"); and Hitachi Astemo, Ltd. (f/k/a Hitachi Automotive Systems, Ltd.), successor to Showa Corporation ("Hitachi Astemo").

- Worked with Plaintiffs to identify relevant business records in support of their claims;

- Worked extensively with Plaintiff Performance Internet Parts LCC to identify documents and information that rebutted factual allegations in KYB's motion to compel arbitration and to dismiss claims;

- Prepared appellate brief and presented oral argument that resulted in affirmation of this Court's Order denying KYB's motion to compel arbitration and dismiss claims (*In re: Auto. Parts Antitrust Litig.,* 951 F.3d 377 (6th Cir. 2020);

- Participated in proffer and/or cooperation meetings with Defendants' counsel;

- Engaged in extensive settlement negotiations, separately, with each of the Settling Defendants;

- Prepared settlement agreements with each of the Settling Defendants;

- Drafted the settlement notices, orders, and preliminary and final approval motions and memoranda in support of settlement; and

- Worked with the claims administrator to design and disseminate the class notices and a claim form, and to create and maintain a settlement website.

## III.   CLASS NOTICE

On March 9, 2023, the Notice of Proposed Settlements of Direct Purchaser Class Action with KYB and Hitachi Astemo Defendants and Hearing on Settlement Approval and Related Matters, and Claim Form (the "Notice") was mailed to potential members of the settlement classes. The Notice was also posted on-line at www.AutoPartsAntitrustLitigation.com/ShockAbsorbers, the website dedicated to this litigation. On March 20, 2023, a summary notice was published in *Automotive News*, and an Informational Press Release was issued nationwide via PR Newswire's "Auto Wire," which targets auto industry trade publications.

As required by Fed. R. Civ. P. 23(h), the Notice informed settlement class members that Plaintiffs' counsel would request an award of attorneys' fees of up to one-third of the Settlement

Fund and reimbursement of expenses (Notice at 4-5). It also explained how class members could exclude themselves or object to the requests. *Id*. at 4.

The deadline for objections or requests for exclusion is May 1, 2023. To date, there have been no objections to the settlements, the fee or expense request, or the request for service awards for the class representatives; and no requests for exclusion from the settlement classes. Plaintiffs' counsel will provide the Court with a final report on objections and requests for exclusion before the settlement hearing scheduled for June 8, 2023.

## IV.   THE WORK PLAINTIFFS' COUNSEL PERFORMED FOR THE BENEFIT OF THE SETTLEMENT CLASSES

The class action lawsuit on behalf of a class of direct purchasers of Shock Absorbers was commenced in October 2016. Plaintiffs allege that Defendants conspired to suppress and eliminate competition for Shock Absorbers by agreeing to rig bids for, and to raise, fix, stabilize, and/or maintain the prices of Shock Absorbers,[2] in violation of federal antitrust laws. Plaintiffs further allege that because of the conspiracy, Plaintiffs and other direct purchasers of Shock Absorbers were injured by paying more for those products than they would have paid in the absence of the alleged illegal conduct. Plaintiffs sought recovery of treble damages, together with reimbursement of costs and an award of attorneys' fees.

After protracted litigation pertaining to KYB's motion to dismiss and compel arbitration, including its unsuccessful appeal, on September 18, 2021, Plaintiffs reached a settlement with KYB for $3,500,000. On September 28, 2022, Plaintiffs and KYB executed an amended settlement

---

[2] "Shock Absorbers," as defined in each settlement agreement, are part of the suspension system on automobiles (including passenger vehicles, pickup trucks, light trucks, crossovers, minivans, vans, and sports utility vehicles) and motorcycles. They absorb and dissipate energy to help cushion vehicles on uneven roads leading to improved ride quality and vehicle handling. They are also dampers, and on motorcycles are referred to as front forks and rear cushions.

agreement. Plaintiffs and KYB executed a second amended settlement agreement. Plaintiffs reached a settlement with Hitachi Astemo on November 16, 2022, in the amount of $2,500,000. The Settlement Fund created from the two settlements totals $6,000,000. On March 1, 2023, the Court preliminarily approved the KYB and Hitachi Astemo settlements, and authorized the dissemination of notice to the KYB and Hitachi Astemo Settlement Classes. (2:15-cv-3301, ECF No. 80).

Working with the settlement administrator, Plaintiffs' counsel prepared and disseminated notices and claim forms for the settlements consistent with the Court's Notice Order. The final fairness hearing on the settlements and the motion for an award of attorneys' fees, litigation expenses, and service awards for the class representatives is scheduled for June 8, 2023.

## V.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE.

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." As discussed above, Plaintiffs' counsel complied with the requirements of Rule 23(h)(1) and (2) (notice to the class of the attorneys' fees request and an opportunity to object). What remains for the Court to determine is whether the requested fee is reasonable and fair to the class members and Plaintiffs' counsel under the circumstances of this case. As discussed below, Plaintiffs' counsel's fee request of one-third of the Settlement Fund is fair and reasonable and well-supported by applicable law.

### A.   THE PERCENTAGE-OF-THE-RECOVERY METHOD PREVIOUSLY EMPLOYED BY THE COURT IN THIS MDL IS APPROPRIATE FOR ASSESSING THE FEE REQUEST.

As the Court has previously observed, Sixth Circuit law gives district courts discretion to select an appropriate method for determining the reasonableness of attorneys' fees in class actions. *In re Automotive Parts Antitrust Litig.*, 2016 WL 8201516, at *1 (E.D. Mich. Dec. 28, 2016)

4

(citations omitted). *See generally Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (discussing the advantages and disadvantages of the two methods). In this MDL, the Court has used the percentage-of-the-fund method. *E.g., In re Automotive Parts Antitrust Litig.*, 2016 WL 8201516, at *1 (collecting cases) (holding that "the percentage-of-the-fund … method of awarding attorneys' fees is preferred in this district because it eliminates disputes about the reasonableness of rates and hours, conserves judicial resources, and aligns the interests of class counsel and the class members"). *See also Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *In re Packaged Ice Antitrust Litig.,* 2011 WL 6209188, at *16 (E.D. Mich. Dec. 13, 2011); *In re Delphi Corp. Sec. Derivative & ERISA Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008). Plaintiffs' counsel respectfully request that the Court apply the percentage-of-the-fund method here, as it has in all the other *Automotive Parts* cases.

### B.   THE REQUESTED FEE CONSTITUTES A FAIR AND REASONABLE PERCENTAGE OF THE SETTLEMENT FUND.

Plaintiffs' counsel respectfully request a fee of one-third of the proceeds of the Settlement Fund that was created by their efforts and will benefit the settlement classes. As detailed below, there is substantial precedent to support the requested fee.

A fee of one-third of the settlement proceeds is well within the range of fee awards approved as reasonable by the Court and many others. To date in the *Automotive Parts Litigation*, the Court has approved several fee awards of one-third of the settlement fund in question, finding that percentage to be reasonable. *In Re: Bearings Cases,* 2:12-cv-00501-SFC-RSW (Nov. 18, 2021) (ECF No. 522) (awarding Direct Purchaser Plaintiffs' counsel 33.33% of a $6,445,199.05 settlement fund); *In re Automotive Parts Antitrust Litig.*, 2016 WL 8201516, at *2 (E.D. Mich. Dec. 28, 2016) (awarding counsel for the Truck and Equipment Dealer Plaintiffs 33.33% of a $4,616,499 settlement fund in the *Wire Harness* and *Occupant Safety Systems* cases); 12-cv-

5

00102-MOB-MKM, ECF No. 401 (awarding counsel for the Auto Dealer Plaintiffs 33.33% of a $55,500,504 settlement fund in *Wire Harness*).

The requested one-third award is also consistent with a wealth of authority from courts in the Sixth Circuit (and others) approving class action fees in the range of 30% to one-third of a common fund. *See Bessey v. Packerland Plainwell, Inc*., 2007 WL 3173972, at *4 (W.D. Mich. 2007) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery") (internal quotation marks omitted). Specifically, in antitrust cases, district courts in the Sixth Circuit and elsewhere have awarded 30% or more of settlement funds as reasonable attorneys' fees. *See, e.g*., *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) (one-third of $19 million fund); *In re Skelaxin (Metaxalone) Antitrust Litig*., 2014 WL 2946459, *1 (E.D. Tenn. Jun. 30, 2014) (one-third of $73 million fund); *In re Southeastern Milk Antitrust Litig.*, 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013) (one-third of $158.6 million fund); *In re Foundry Resins Antitrust Litig.,* Case No. 2:04-md-1638 (S.D. Ohio Mar. 31, 2008) (one-third of $14.1 million fund); *In re Polyurethane Foam Antitrust Litig.,* 2015 WL 1639269, at *7 (N.D. Ohio Feb. 26, 2015) (30% of a $148.7 million fund). Plaintiffs' counsel's fee request of one-third of the Settlement Fund is fully supported by the above and many other courts' decisions.[3]

---

[3] *See, e.g., In re Domestic Drywall Antitrust Litig.*, 2018 WL 3439454, at *20 (E.D. Pa. July 17, 2018) (awarding one-third of $190 million settlement and $2.95 million in expenses); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 1:09-cv-07666 (N.D. Ill. Jan. 22, 2014) (awarding one-third interim fee from initial settlement in multi-defendant case); *Standard Iron Works v. Arcelormittal,* 2014 WL 7781572, at *1 (N.D. Ill. Oct. 22, 2014) (attorneys' fee award of one-third of $163.9 million settlement); *In re Fasteners Antitrust Litig.*, 2014 WL 296954, *7 (E.D. Pa. Jan. 27, 2014) ("Co–Lead Counsel's request for one third of the settlement fund is consistent with other direct purchaser antitrust actions."); *In re Titanium Dioxide Antitrust Litig.,* 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (one-third fee from $163.5 million fund); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 748-52 (E.D. Pa. 2013) (noting that "in the last two-and-a-half years, courts in eight direct purchaser antitrust actions approved one-third fees," and

C.     THE FACTORS IDENTIFIED BY THE SIXTH CIRCUIT SUPPORT THE REQUESTED FEE.

Once the Court has selected a method for awarding attorneys' fees, the next step is to consider the six factors the Sixth Circuit has identified to guide courts in weighing a fee award in a common fund case: (1) the value of the benefit rendered to the class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *E.g., Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996); *In re Wire Harness Cases*, 2:12-cv-00101 (E.D. Mich.) (ECF No. 495), at 3-5. When applied to the facts of this case,

---

awarding one-third fee from $150 million fund, a 2.99 multiplier); *In re Linerboard Antitrust Litig.,* 2004 WL 1221350 (E.D. Pa., June 2, 2004) (30% of $202 million fund awarded, a 2.66 multiplier); *In re OSB Antitrust Litig.,* Master File No. 06-826 (E.D. Pa.) (fee of one-third of $120 million in settlement funds); *Heekin v. Anthem, Inc.*, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) (awarding one-third fee from $90 million settlement fund); *In re Ready-Mixed Concrete Antitrust Litig.*, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) (approving one-third fee); *Williams v. Sprint/United Mgmt. Co,* 2007 WL 2694029, at *6 (D. Kan., Sept. 11, 2007) (awarding fees equal to 35% of $57 million common fund); *Lewis v. Wal-Mart Stores, Inc.,* 2006 WL 3505851, at *1 (N.D. Okla., Dec. 4, 2006) (awarding one-third of the settlement fund and noting that a "one-third [fee] is relatively standard in lawsuits that settle before trial."); *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.,* 234 F.R.D. 627, 635 (W.D. Ky. 2006) ("[A] one-third fee from a common fund case has been found to be typical by several courts.") (citations omitted), *aff'd*, 534 F.3d 508 (6th Cir. 2008); *In re AremisSoft Corp., Sec. Litig.,* 210 F.R.D. 109, 134 (D.N.J. 2002) ("Scores of cases exist where fees were awarded in the one-third to one-half of the settlement fund.") (citations omitted); *Klein v. PDG Remediation, Inc.,* 1999 WL 38179, at *4 (S.D.N.Y., Jan. 28, 1999) ("33% of the settlement fund…is within the range of reasonable attorney fees awarded in the Second Circuit"); *Moore v. United States,* 63 Fed. Cl. 781, 787 (2005) ("one-third is a typical recovery"); *In re FAO Inc. Sec. Litig.*, 2005 WL 3801469, at * 2 (E.D. Pa., May 20, 2005) (awarding fees of 30% and 33%); *Godshall v. Franklin Mint Co.*, 2004 WL 2745890, at *5 (E.D. Pa., Dec. 1, 2004) (awarding a 33% fee and noting that "[t]he requested percentage is in line with percentages awarded in other cases"); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433-44 (E.D. Pa. 2001) (awarding one-third of a $48 million settlement fund).

these factors indicate that the requested fee constitutes fair and reasonable compensation for Plaintiffs' counsel's efforts in creating the Settlement Fund.

### 1. PLAINTIFFS' COUNSEL OBTAINED A VALUABLE BENEFIT FOR THE CLASSES.

The result achieved for the class is the principal consideration when evaluating a fee request. *E.g., Delphi*, 248 F.R.D. at 503. Here, Plaintiffs' counsel achieved a meaningful recovery of $6,000,000 for the settlement classes.

### 2. THE VALUE OF PLAINTIFFS' COUNSEL'S SERVICES ON AN HOURLY BASIS CONFIRMS THAT THE REQUESTED FEE IS REASONABLE.

When fees are awarded using the percentage-of-the-fund method, this Court and others have applied a lodestar "cross-check" on the reasonableness of a fee calculated as a percentage of the fund. *In Re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 754 (S.D. Ohio 2007); *In re Packaged Ice Antitrust Litig.,* 2011 WL 6209188, at *18. Use of a lodestar cross-check is optional, however, and because it is only a check, the court is not required to engage in a detailed review and evaluation of time records. *Cardinal*, 528 F. Supp. 2d at 767. Here, the amount of time Plaintiffs' counsel expended in instituting and litigating the case and bringing it to a successful conclusion makes it clear that the fee requested is well "aligned with the amount of work the attorneys contributed" to the recovery and does not constitute a "windfall." *See id.*

To calculate the lodestar, a court first multiplies the number of hours counsel reasonably expended on the case by their reasonable hourly rate. *See Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). Here, as described above, a substantial amount of time has been spent by Plaintiffs' counsel litigating the case and achieving the settlement. That work was managed with an eye toward efficiency and avoiding duplication.

As set forth in the law firm Declarations submitted as Exhibit 1 with this motion, Plaintiffs'

counsel have expended 3,225.55 hours from the inception of the case through February 28, 2023.

Applying the historical rates charged by counsel to the hours expended yields a lodestar value of

$2,159,374.25.[4] A one-third fee would be $2,000,000. Without considering future work on the

case, the current multiplier is .926.

The hours Plaintiff's counsel expended on this case were reasonable and necessary. One of

the recognized benefits of using the percentage-of-the-fund method is that it better aligns the

interests of class counsel with the interests of class members and eliminates any incentive to

unnecessarily expend hours. Here, Plaintiffs' counsel achieved a meaningful recovery for the class

members without burdening the Court or the parties with unnecessary expenditures of time, effort,

or money.

### 3. THE REQUESTED FEE IS FAIR AND REASONABLE GIVEN THE REAL RISK THAT COUNSEL COULD HAVE RECEIVED NO COMPENSATION FOR THEIR EFFORTS.

Defendants are represented by highly experienced and competent counsel. Absent the

settlements, Defendants and their counsel were prepared to defend this case through trial and

appeal. Litigation risk is inherent in every case, and this is particularly true with respect to class

actions. Therefore, while Plaintiffs were optimistic about what would be the eventual outcome of

this litigation, they must acknowledge the risk that Defendants could prevail on certain legal or

factual issues, which could result in the reduction or elimination of any potential recovery.

---

[4] The Supreme Court has held that the use of current rates, as opposed to historical rates, is appropriate to compensate counsel for inflation and the delay in receipt of the funds. *Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987). Nevertheless, Plaintiff's counsel have submitted their lodestar information at their lower historical rates, rather than at their current (higher) rates.

The risk factor attempts to compensate class counsel in contingent fee litigation for having taken on the risk of receiving less than their normal hourly rates, or even nothing at all. *See, e.g. Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), *overruled on other grounds*, *Int'l Woodworkers of Am. AFL-CIO and its Local No. 5-376 v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986); *In re Packaged Ice Antitrust Litig.,* 2011 WL 6209188, at *19 (risk of non-payment a factor supporting the requested fee). When Plaintiffs' counsel commenced this case there was a risk that they would recover nothing, or an amount insufficient to support a fee that equaled their lodestar. Therefore, the risk of non-payment is another factor that supports the requested fee. *In re Wire Harness Cases*, 2:12-cv-00101 (E.D. Mich.) (ECF No. 495 at 4).

### 4.   SOCIETY HAS AN IMPORTANT STAKE IN THIS LAWSUIT AND IN AN AWARD OF REASONABLE ATTORNEYS' FEES.

It is well established that there is a "need in making fee awards to encourage attorneys to bring class actions to vindicate public policy (*e.g.*, the antitrust laws) as well as the specific rights of private individuals." *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245, 260 (N.D. Ill. 1979). Courts in the Sixth Circuit weigh "society's stake in rewarding attorneys who [win favorable outcomes in antitrust class actions] in order to maintain an incentive to others . . . Society's stake in rewarding attorneys who can produce such benefits in complex litigation such as in the case at bar counsels in favor of a generous fee . . . Society also benefits from the prosecution and settlement of private antitrust litigation." *In re Cardizem*, 218 F.R.D. 508, 534 (E.D. Mich. 2003) (internal quotation marks omitted). *Accord, Delphi,* 248 F.R.D. at 504.

In this regard, the recovery Plaintiffs' counsel obtained makes it clear that antitrust violations will be the subject of vigorous private civil litigation to deter similar future conduct. Since society gains from competitive markets that are free of collusion, Plaintiffs' counsel's work benefitted the public.

**5.  THE COMPLEXITY OF THIS CASE SUPPORTS THE REQUESTED FEES.**

The Court is well aware that "[a]ntitrust class actions are inherently complex . . . ." *In re Cardizem*, 218 F.R.D. at 533.  S*ee also In re Packaged Ice Antitrust Litig.,* 2011 WL 6209188, at *19; *In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003) ("An antitrust class action is arguably the most complex action to prosecute.  The legal and factual issues involved are always numerous and uncertain in outcome.") (citations and internal quotation marks omitted). This case is no exception.

**6.  SKILL AND EXPERIENCE OF COUNSEL**

The skill and experience of counsel on both sides of the "v" is another factor that courts may consider in determining a reasonable fee award. *E.g., Polyurethane Foam,* 2015 WL 1639269, at * 7; *Packaged Ice,* 2011 WL 6219188, at *19. The Court appointed four firms with national reputations as leaders in antitrust and other complex litigation: Kohn, Swift & Graf, P.C.; Preti, Flaherty, Beliveau & Pachios, LLP; Freed Kanner London & Millen, LLC; and Spector Roseman & Kodroff, P.C., as Interim Co-Lead Settlement Class Counsel for all the direct purchaser cases. By doing so, the Court recognized that these firms have the requisite skill and experience in class action and antitrust litigation to effectively prosecute these claims. Fink Bressack has ably served as liaison counsel for this and all the direct purchaser *Automotive Parts* cases, and Cera LLP has provided substantial antitrust expertise in representing the Plaintiffs.

When assessing this factor, courts may also look to the qualifications of the defense counsel opposing the class. Here, the quality of defense counsel is top-notch. Defense counsel has an excellent reputation in the antitrust bar, significant experience, and extensive resources at their disposal.

But in the final analysis, as more than one court has observed, "[t]he quality of work performed in a case that settles before trial is best measured by the benefit obtained." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir 1990). As explained *supra*, a meaningful cash benefit was obtained for the settlement classes in this case, which provides the principal basis for awarding the attorneys' fees sought by Plaintiffs' counsel.

Given the result achieved, the complexity of the claims and defenses, the work performed by Plaintiffs' counsel, the real risk of non-recovery (or recovery of less than the amount of the Settlement Fund), formidable defense counsel, the delay in receipt of payment, the substantial experience and skill of Plaintiffs' counsel, the negative multiplier on the lodestar, and the societal benefit of this litigation, an attorneys' fee award of one-third of the Settlement Fund would be reasonable compensation for Plaintiffs' counsel's work.

## VI.  THE COURT SHOULD AUTHORIZE CO-LEAD SETTLEMENT CLASS COUNSEL TO DETERMINE FEE ALLOCATIONS.

Plaintiffs' counsel worked collectively on this litigation under the supervision of Co-Lead Settlement Class Counsel appointed by the Court. This Court, and courts generally, have approved joint fee applications that request a single aggregate fee award, with allocations to specific firms to be determined by the lead counsel, who know the most about the work done by each firm and the relative contribution each firm made to the success of the litigation.[5] Co-Lead Settlement Class Counsel—Freed Kanner, Kohn Swift, Preti Flaherty, and Spector Roseman—have directed this case from its inception and are best "able to describe the weight and merit of each [counsel's] contribution." *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *17-18 (citation omitted,

---

[5] *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 n.15 (3d Cir. 2004) (noting "the accepted practice of allowing counsel to apportion fees amongst themselves"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357 (N.D. Ga. 1993) ("Ideally, allocation is a private matter to be handled among class counsel").

alteration in original); *see also In re Copley Pharm.*, *Inc. Albuterol Prods. Liab. Litig.*, 50 F. Supp. 2d 1141, 1148 (D. Wy. 1999), *aff'd*, 232 F.3d 900 (10th Cir. 2000). From an efficiency standpoint, leaving the allocation in this case to Freed Kanner, Kohn Swift, Preti Flaherty, and Spector Roseman makes good sense because it relieves the Court of the "difficult task of assessing counsels' relative contributions." *In re Prudential Ins. Co. Amer. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 329 n. 96 (3d Cir. 1998); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173 (3d Cir. 2005) (lead counsel given substantial authority to allocate fees awarded by Court).

Plaintiffs' counsel therefore request that the Court (as it has in connection with every other fee award in the direct purchaser *Automotive Parts* cases) approve the aggregate amount of the fees requested, with the specific allocation of the fees to be performed by Co-Lead Settlement Class Counsel. *See Polyurethane Foam, supra.* To the extent that there are disputes that cannot be resolved by counsel, the Court would retain the jurisdiction necessary to decide them. *See In re Automotive Refinishing Paint Antitrust Litig.,* 2008 WL 63269, at *8 (E.D. Pa. Jan. 3, 2008) (co-lead counsel to allocate fees with the court retaining jurisdiction to address any disputes).

## VII.    REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES INCURRED IN THE PROSECUTION OF THIS LITIGATION

Plaintiffs' counsel respectfully request an award of litigation costs and expenses in the amount of $17,231.71, which reflects unreimbursed expenses incurred in the prosecution of this litigation from inception through February 28, 2023. Expenses for telephone calls, faxes, and internal copying are not included in counsel's request. As the court stated in *In re Cardizem*, "class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of this litigation, including expenses incurred in connection with document productions, travel and other litigation-related expenses." 218 F.R.D. at 535.

The out-of-pocket expenses paid or incurred by each law firm are set forth in the Declarations attached as Exhibit 1. These expenses were reasonable and necessary to pursue the case and to obtain the substantial settlements reached in this litigation.

## VIII.   SERVICE AWARDS TO THE CLASS REPRESENTATIVES ARE APPROPRIATE.

Plaintiffs' counsel request that the Court award a $25,000 service award to each class representative. The Sixth Circuit has noted that such awards may be appropriate under certain circumstances. *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 311 (6th Cir. 2016); *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). In surveying decisions from other courts, the Court explained that:

> Numerous courts have authorized incentive awards. These courts have stressed that incentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class. Yet applications for incentive awards are scrutinized carefully by courts who sensibly fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain.

*Hadix v. Johnson*, 322 F.3d at 897 (internal citations omitted).

Service awards to the class representatives are appropriate here. Plaintiffs stepped forward to represent the classes and their industry knowledge and documents were instrumental in defeating KYB's motion to compel arbitration and the subsequent appeal. Their efforts helped to ensure the case had a successful resolution that will benefit all class members. This is not a case where the class representatives compromised the interests of the classes for personal gain. The class representatives were not promised service awards. The settlements were negotiated by Plaintiffs' counsel and then presented to the class representatives for their review and approval without any discussion of service awards. The prospect of such awards was not a reason why the representative Plaintiffs approved these settlements. *Hillson v. Kelly Servs. Inc.*, 2017 WL 279814,

14

at *6 (E.D. Mich. 2017). Moreover, this is not a case where the requested service awards will dwarf the amounts that class members will receive through the claims process.[6]

The class representatives devoted a significant amount of time and effort to representing the interests of the class members, including but not limited to the following:

- Assisting counsel in developing an overall understanding of the Shock Absorbers market;

- Discussing with counsel preservation of electronic and hard-copy documents and taking steps to implement preservation plans;

- Discussing with counsel and collecting documents for review and potential production to Defendants;

- Working with Plaintiff's counsel to rebut KYB's factual assertions to compel arbitration, including providing declarations that were critical to the denial of defendants' motions at the trial court and subsequent appeal;

- Reviewing pleadings and keeping apprised of the status of the litigation; and

- Reviewing the settlements and conferring with counsel to determine whether the settlements were in the best interest of the settlement classes.

Finally, service awards of this size or larger are not uncommon in lengthy, highly complex antitrust cases. Indeed, the Court previously approved a $50,000 service award to each class representative in the *Wire Harness* and *Bearings* cases. *See* 2:12-cv-00101-MOB-MKM (ECF No. 495 at 6, ¶23) and 2:12-cv-00501-SFC-RSW (ECF No. 499 at 2, ¶6). *See also In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *5 (granting each class representative an award

---

[6] In cases where courts have rejected service awards, the awards were so disproportionately large relative to the cash benefits to the class that the courts called the class representatives' adequacy into question. For example, in *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013), the Court reversed the award of $1,000 payments to the class representatives when class members received "nearly worthless injunctive relief." In *Machesney, v. Lar-Bev of Howell, Inc.*, 2017 WL 2437207, at *11 (E.D. Mich. Jun. 2017), the court did not approve a proposed $15,000 incentive payment because it was "30 times more than the maximum that any class member could receive under the proposed settlement."

of $50,000); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (same). The class representatives here put in great effort and provided commendable service on behalf of the members of the settlement classes to help create the $6,000,000 Settlement Fund. The requested awards of $25,000 for each class representative are fair to the settlement classes and appropriate under the facts and the law.

## IX.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant its motion for an award of attorneys' fees, litigation costs and expenses, and service awards for the class representatives.

Dated: April 10, 2023                                Respectfully submitted,

 /s/ David H. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
FINK BRESSACK
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500

*Interim Liaison Counsel for the Direct Purchaser Plaintiffs*

Steven A. Kanner                              Joseph C. Kohn
William H. London                             William E. Hoese
Michael E. Moskovitz                          Douglas A. Abrahams
FREED KANNER LONDON                           KOHN, SWIFT & GRAF, P.C.
  & MILLEN LLC                                1600 Market Street, Suite 2500
2201 Waukegan Road, Suite 130                 Philadelphia, PA  19103
Bannockburn, IL  60015                        Telephone: (215) 238-1700
Telephone: (224) 632-4500

Gregory P. Hansel  
Randall B. Weill  
Michael S. Smith  
PRETI, FLAHERTY, BELIVEAU  
   & PACHIOS LLP  
One City Center, P.O. Box 9546  
Portland, ME  04112-9546  
Telephone: (207) 791-3000  

William G. Caldes  
Jeffrey L. Spector  
SPECTOR ROSEMAN & KODROFF, P.C.  
2001 Market Street  
Suite 3420  
Philadelphia, PA  19103  
Telephone: (215) 496-0300  

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

Solomon B. Cera  
Thomas C. Bright  
Pamela A. Markert  
CERA LLP  
201 California Street, Suite 1240  
San Francisco, CA 94111  
Telephone: (415) 777-2230  

*Counsel for Plaintiff Performance Internet Parts, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2023, I electronically filed the foregoing document with

the Clerk of the court using the ECF system, which will send notification of such filing to all

counsel of record registered for electronic filing.

 /s/ Nathan J. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
FINK BRESSACK
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
